Travis M. Tatko (CA Bar #289203)
TATKO LAW FIRM, PLLC
649 Mission Street, 5th Floor
San Francisco, CA 94105
Phone: (415) 529-6619
Fax:    (888) 419-0650
TravisTatko@TatkoLawFirm.com

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, EASTERN DISTRICT**

| | |
|---|---|
| RUBEN CALDERON, | ) CASE NUMBER |
| | ) |
| Plaintiff, | ) |
| v. | ) **COMPLAINT** |
| | ) **DEMAND FOR JURY TRIAL** |
| SAINT PATRICK PRODUCTIONS LLC, | ) |
| MICHAEL SHAWN RILEY, | ) |
| CONOR RILEY, and | ) |
| JOHN BULICEK | ) |
| | ) |
| Defendants. | |

Ruben Calderon ("Plaintiff or "Mr. Calderon"), by and through the undersigned counsel, alleges upon knowledge as to himself and his own conduct, and otherwise upon information and belief, including based on investigation of counsel and facts stated in the public record, hereby alleges:

**INTRODUCTION**

1. This case arises out of the conduct of Saint Patrick Productions LLC ("SPP"), Michael Shawn Riley ("Michael Riley"), Conor Riley ("Conor Riley"), and John Bulicek ("Mr. Bulicek") (each, a "Defendant," and collectively, "Defendants") in unlawfully inducing a sale of unregistered securities to Plaintiff in exchange for his investment of $200,000, and engaging in a

**COMPLAINT; DEMAND FOR JURY TRIAL**

course of acts and omissions over several years to deceive, obscure, and misrepresent the status and state of affairs of SPP and withhold the return of Plaintiff's investment.

2. Starting at the end of 2014 and through October 2015, Michael Riley, Conor Riley, and Mr. Bulicek solicited Plaintiff to invest in SPP's Class A Preferred Membership Shares. Defendants claimed, among many other representations, that SPP was producing a full-length feature film on the life of Saint Patrick that would be filmed by the Summer of 2017 for release in at least 1,500 theaters in the United States in 2018. They also represented that they had raised millions of dollars, and were raising tens of millions of dollars for the film project, and that the financing had nearly been completed. They also represented that SPP had engaged with major film producers, directors, and actors, including that Steve McEveety ("Mr. McEveety"), who had produced the films *Braveheart* and *The Passion of the Christ*, and his production company, MPower Pictures, were co-producing the film, and that Jim Sheridan, a six-time Academy Award nominated director, was directing the film, and that Defendants were considering casting high-profile actors that expressed interest in participating in the film, including the likes of Gerard Butler, Ewan McGregor, and Anthony Hopkins. They also represented that the investors would receive a "substantial" and "meaningful" preferred return on their investment, while never disclosing at all, either orally or in writing, any potential risk factors related to the investment. They also provided Plaintiff with an Operating Agreement for SPP, which provided extensive terms and restrictions providing comfort to investors like Plaintiff to induce his investment, including requiring the funds from the Series A Preferred financing to be used only in certain, designated ways and limited to specific percentages, that the funds from the Series A Preferred financing were to be maintained in an interest-bearing account with the accrued interest paid annually to the investors, that an annual accounting was to be

**COMPLAINT; DEMAND FOR JURY TRIAL**

provided by SPP to the investors, and – most importantly – that the investment was to be returned to the investors if the production of the film did not begin by July 1, 2016.

3.  Based on these and other representations made by Michael Riley, Conor Riley, and Mr. Bulicek, Plaintiff invested $200,000 in SPP in exchange for 4 Class A Preferred Membership Shares in the company at the end of 2015.

4.  Subsequently, for several years, Defendants have represented that the film project is ongoing, but have failed to provide any annual accountings, as required under SPP's Operating Agreement, or company books and records that have been repeatedly requested by Plaintiff to date.  Defendants have also promised substantial returns on the film project.  However, now in 2021, no film has ever been produced, nor have Defendants provided any tangible indicia of any progress on the film.

5.  The truth, which has only been learned very recently by Plaintiff, is that SPP never began production at all on the Saint Patrick film.  In fact, unbeknownst to Plaintiff, the Saint Patrick film project was abandoned several years ago by Mr. McEveety due to the inability to raise funding.  All the while, Defendants have continued to misrepresent and obscure the true state of affairs of SPP and the film project, including representing that they had raised tens of millions of dollars to produce the film, while improperly retaining Plaintiff's $200,000 investment.

6.  Even worse, upon information and belief, Defendants may have misappropriated Plaintiff's investments for their own personal uses, or for film projects that have nothing to do with the Saint Patrick film, as they continue to refuse to account for and return the investment for a film project that never even started production.

7.  Accordingly, Plaintiff brings this action for breach of contract against SPP; violations of the Securities and Exchange Act of 1934, Rule 10(b) and S.E.C. Rule 10b-5 (15

U.S.C. § 78j(b), *et seq*, and 17 C.F.R. § 240.10b-5) against all Defendants; violations of California Securities Laws (Cal Corp. Code §§ 25400(d), 25401, 25500, and 25504) against all Defendants; rescission pursuant to California Securities Laws (Cal Corp. Code § 25501); violations of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq.*), California statutory and common law governing fraud and deceit (Cal. Civ. Code §§ 1709, 1710) against all Defendants; fraudulent concealment (Cal. Civ. Code § 1710) against all Defendants; constructive fraud (Cal. Civ. Code § 1753) against all Defendants; and negligent misrepresentation (Cal. Civ. Code § 1710) against all Defendants.

## PARTIES

8. Plaintiff Ruben Calderon is a Massachusetts resident.

9. Defendant Saint Patrick Productions, LLC is a Delaware corporation with its principal place of business, upon information and belief, in Beverly Hills, California.

10. Defendant Michael Riley is, upon information and belief, a Florida resident. Mr. Riley has conducted regular business in the State of California on behalf of SPP, including, but not limited to, attending a business meeting with Plaintiff in California in 2020.

11. Defendant Conor Riley is, upon information and belief, a California resident, and the manager of SPP.

12. Defendant John Bulicek is, upon information and belief, a California resident.

13. Plaintiff alleges and believes that others may have aided and abetted Defendants' unlawful conduct and reserves the right to name additional defendants.

## JURISDICTION

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

COMPLAINT; DEMAND FOR JURY TRIAL

15. In addition, this action arises under the provisions of the Securities and Exchange Act of 1934, Rule 10(b) and S.E.C. Rule 10b-5 (15 U.S.C. § 78j(b), *et seq*, and 17 C.F.R. § 240.10b-5). Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa. This Court also has supplemental jurisdiction over the related claims asserted herein pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the acts and occurrences that gave rise to this dispute occurred substantially in this district. In addition, the Subscription Agreement between Plaintiff and SPP contains a governing law and venue provision providing that the Subscription Agreement shall be governed by California law and that all disputes arising under the Subscription Agreement shall be submitted to the courts of California.

## FACTUAL ALLEGATIONS

17. In or about the end of 2014, Defendants approached Plaintiff seeking Plaintiff's investment in a film project being produced by SPP. Plaintiff was initially introduced to SPP by Mr. Bulicek, who, upon information and belief, is a registered investment banker engaged to raise capital for SPP. On or about December 1, 2014, Mr. Bulicek provided a script of the Saint Patrick film by electronic mail to Plaintiff, and represented that the film was going to be co-produced by SPP and MPower Pictures, Mr. McEvetty's production company. Thereafter, Mr. Bulicek introduced Plaintiff to Michael Riley, who was understood by Plaintiff to be generally in charge of SPP as the president of SPP, and Conor Riley, the son of Michael Riley, who holds the title of Manager in SPP.

18. During the course of the next months through October 2015, Defendants Michael Riley and Mr. Bulicek made calls and engaged in discussions with Plaintiff in an attempt to lure Plaintiff to invest in SPP, including meeting with Plaintiff in Massachusetts, and repeatedly and

**COMPLAINT; DEMAND FOR JURY TRIAL**

continuously made a number of representations to Plaintiff, including, but not limited to, that:

  a. SPP had already raised millions of dollars in funding, and was well on track to raising approximately $25 million to fund the production of the film very soon.

  b. The Saint Patrick film would generate revenues in the zone of twenty times the cost of production, on par with prior films produced by Mr. McEvetty, *Braveheart* and *The Passion of the Christ*.

  c. Filming would be completed by 2017.

  d. The film would be released in 2018 to at least 1,500 theaters in the United States.

  e. Numerous high-profile directors and actors were being approached and expressed interest in being involved with the Saint Patrick film, including Jim Sheridan, Mel Gibson, Gerard Butler, Ewan McGregor, and Anthony Hopkins.

  f. SPP's investors would receive Class A Preferred Membership Shares in SPP, entitling the investors to a guaranteed 115% preferred priority return on their investments with an income participation of 50% of the net profits of the film in perpetuity.

  g. As provided in Section 7.1(a) of SPP's Operating Agreement, the proceeds from the Class A Preferred Membership Shares were to be used only in connection with the rights acquisition, development, production, distribution, and exploitation of the Saint Patrick film, with the sole exceptions for up to 1% for transactional and organizational costs of SPP, up to 4.5% for third-party financing costs, and up to 2% per year for SPP's operating costs, and

6

COMPLAINT; DEMAND FOR JURY TRIAL

        that SPP's management would use best efforts to minimize these expenditures.

   h.  SPP was required to provide an annual accounting of all amounts spent by SPP on a calendar annual basis to the holders of Class A Preferred Membership Shares (the "Preferred Members").

   i.  All amounts paid by the Preferred Members would be maintained in an interest-bearing account at a nationally recognized financial institution.

   j.  The interest accruing on such proceeds would be distributed on an annual basis to the Preferred Members on a *pro rata* basis.

   k.  If the Company did not produce the film by July 1, 2016, the Preferred Members were entitled to receive a return of their investment amounts, plus interest, less any amounts properly utilized by SPP in accordance with Section 7.1(a) of SPP's Operating Agreement.

   l.  SPP was being represented by the law firm of Hately & Hampton located in Santa Monica, California.

19. Conor Riley is the manager of SPP, and was listed on various documents provided by Defendants to induce Plaintiff's investment.

20. In reliance on these and other representations by Defendants Michael Riley, Conor Riley, and Mr. Bulicek, Plaintiff agreed to acquire 4 Class A Preferred Membership Shares in SPP for an investment of $200,000.

21. On or about October 29, 2015, Plaintiff and SPP entered into a subscription agreement (the "Subscription Agreement") for the purchase and sale of 4 Class A Preferred Membership Shares in SPP for an investment of $200,000. Plaintiff made a wire transfer of $200,000 to SPP's bank account.

22. Notably, Defendants did not provide any standard disclosure documents to Plaintiff in connection with Plaintiff's investment, such as a private placement memorandum.

23. At no time prior to Plaintiff's investment did Defendants disclose any risk factors or similar cautionary information regarding SPP or the film project. Plaintiff was led to believe by Defendants that there was no doubt that a film would be produced and filmed in the very near term.

24. Subsequent to making the $200,000 investment, Plaintiff was told by Defendants that the film project was making substantial progress, and that SPP would begin production on the film promptly. In 2016, Defendants informed Plaintiff that close to $30 million had been raised by SPP, and that SPP was in the final stages of funding. Defendants also represented that Jim Sheridan had agreed to direct the film. Defendants also authored and distributed a pitch deck for SPP with information such as names of high-profile actors that SPP was actively pursuing for roles in the film, which included the likes of Gerard Butler, Ewan McGregor, Margot Robbie, Keira Knightley, Anthony Hopkins, and Sean Bean, among many others.

25. While Defendants continued to make these representations, Defendants failed to provide any annual accountings, or make annual payments of interest accruing on the funds raised from the Preferred Members, as represented at the time of Plaintiff's investment and required under SPP's Operating Agreement. Nor did SPP return Plaintiff's investment, as required per the terms of SPP's Operating Agreement. These representations continued for several years.

26. In early 2020, Plaintiff traveled across the country to California to meet with Michael Riley. Michael Riley represented that the film project was ongoing, although delayed, and that Mr. McEvetty and his production company, MPower Productions, continued to be actively involved in the project, but altogether failed to show Plaintiff any tangible evidence that

8
**COMPLAINT; DEMAND FOR JURY TRIAL**

anything at all was being done with the film.

27. On or about November 2, 2020, Plaintiff made a formal written demand for the inspection of books and records of SPP pursuant to Section 18-305 of the Delaware Limited Liability Company Act (the "Books and Records Demand").

28. To date, Defendants have failed to provide any books or records pursuant to Plaintiff's Books and Records Demand. Rather, Mr. Bulicek has been in communication with Plaintiff, apparently at the request of Michael Riley, informing Plaintiff that Michael Riley is angered and upset by the Books and Records Demand, and that Michael Riley and SPP are not going to provide any books and records to Plaintiff voluntarily. Further, Mr. Bulicek informed Plaintiff that Defendants are inclined to include Plaintiff in profit distributions from a separate documentary film project called "Code Red," apparently involving the tragic school shooting at Marjory Stoneman Douglas High School in Parkland, Florida, but only if Plaintiff were to stand down from pursuing his rights with respect to SPP. It has become apparent to Plaintiff that these bullying tactics on the part of Defendants comprise a further attempt to obscure the true state of affairs of SPP.

29. Upon information and belief, Plaintiff's investment of $200,000 has been converted by Defendants for unlawful purposes. Specifically, Mr. Bulicek has told Plaintiff that Plaintiff's investment money is "gone" and that Mr. Bulicek does not know where or what Plaintiff's $200,000 investment was used for.

30. After recent investigation, upon information and belief, Plaintiff has discovered that the many representations made by Defendants in connection with his investment in SPP were false. Upon information and belief, the truth is that:

    a. The Saint Patrick film never began production at all.

    b. SPP did not raise sufficient funding for the project, far from the millions and

tens of millions of dollars that Defendants represented to have raised, which was not the case.

    c. The Saint Patrick film project was abandoned several years ago by Mr. McEveety due to the inability to raise funding. In fact, the nature and extent of Mr. McEveety's claimed relationship with Defendants with respect to the Saint Patrick film project appears to have been wildly and grossly misrepresented by Defendants.

    d. Defendants did not have meaningful discussions with many of the high-profile actors that Defendants claimed to be interested in the Saint Patrick film, contrary to their false representations to induce Plaintiff's investment and thereafter.

    e. The money raised from the Preferred Members was not maintained in an interest-bearing account.

    f. The money raised from the Preferred Members was not returned in accordance with SPP's Operating Agreement, as required if film production did not begin before July 1, 2016, and Defendants had no intention of returning this money.

    g. The money raised from the Preferred Members was not safeguarded in accordance with the provisions of Section 7.1(a) of SPP's Operating Agreement, but was instead apparently misappropriated to improper and unlawful uses.

    h. The law firm of Hately & Hampton, listed prominently on SPP's offering documents and represented by Defendants as SPP's corporate counsel, never represented SPP at all, and was not authorized to be listed as SPP's counsel in

COMPLAINT; DEMAND FOR JURY TRIAL

any offering documents, which was done without the law firm's consent. This had the effect of feigning legitimacy to SPP's endeavor by creating a false impression that SPP had competent legal counsel in California that would be overseeing and protecting the subscriptions made by investors, which was not the case.

31. In addition, not only did Defendants misrepresent material facts related to SPP in order to induce Plaintiff's investment in SPP, but they also failed to disclose numerous material facts about SPP, which would have changed Plaintiff's mind in deciding whether to invest in SPP. Tellingly, Defendants never provided a private placement memorandum or any other written documentation to Plaintiff describing any risk or negative factors related to SPP on or before the date that Plaintiff made his investment in SPP.

32. As a direct result of Defendants' conduct, Plaintiff has been deprived the return of his $200,000 investment and the annual interest accruing on his investment for many years, which Plaintiff could have invested elsewhere at a profitable return. Plaintiff has also been denied the handsome returns that he was promised by Defendants that induced his investment in SPP, including, but not limited to, a preferred 125% return on his investment amount, and his *pro rata* share of 50% of the profits from the Saint Patrick film – a film that has never even started production.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT (Against SPP)**

33. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

34. Plaintiff and SPP agreed to the terms of the Subscription Agreement and the Operating Agreement. Together these documents comprise a contract related to Plaintiff's equity investment in SPP.

**COMPLAINT; DEMAND FOR JURY TRIAL**

35. Plaintiff has fully performed under the contract by, without limitation, investing $200,000 in SPP, which was deposited in SPP's bank account.

36. SPP breached its contract with Plaintiff in numerous ways by failing to comply with the provisions of Section 7.1 of SPP's Operating Agreement, including, but not limited to, failing to provide annual accountings, failing to provide annual interest payments to Plaintiff, and failing to return Plaintiff's investment amount.

37. As a result of SPP's breach, Plaintiff has suffered damages exceeding $200,000.00.

## SECOND CAUSE OF ACTION
**VIOLATIONS OF THE SECURITIES AND EXCHANGE ACT OF 1934, RULE 10(b) AND S.E.C. RULE 10b-5 (15 U.S.C. § 78J(b), *et seq*, AND 17 C.F.R. § 240.10b-5)**
**(Against All Defendants)**

38. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

39. As described above, Defendants, for the purpose of inducing Plaintiff's purchase of securities, materially participated in making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

40. Defendants knew or had reasonable grounds to believe that these statements and omissions were false and misleading. Defendants acted knowingly or severely recklessly in making untrue statements of material facts or omitting material facts.

41. In reliance on the foregoing material misrepresentations and omissions by Defendants, Plaintiff was induced to purchase the securities.

42. As a direct and proximate result of the unlawful conduct of Defendants, Plaintiff has been damaged.

43. By reason of the foregoing, Defendants violated Section 10(b) of the 1934 Act

and Rule 10b-5 thereunder.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF CALIFORNIA SECURITIES LAWS,
### CAL. CORP. CODE §§ 25400(d), 25401, 25500, and 25504
### (Against All Defendants)

44. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

45. Defendants offered to sell, and did sell, securities to Plaintiff by means of written and oral communications that included untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under which the circumstances were made, not misleading.

46. Defendants directly or indirectly controlled SPP, or are principal executive officers or directors of SPP, or perform similar functions, or, in the case of Mr. Bulicek, is an investment banker that materially aided the statements or omissions alleged above.

47. Defendants knew or had reasonable grounds to believe that these statements and omissions were false and misleading, and Plaintiff, who exercised reasonable care, had no knowledge of the falsity of Defendants' statements.

48. As a direct and proximate cause of the conduct of Defendants, Plaintiff has been damaged.

### FOURTH CAUSE OF ACTION
### RESCISSION PURSUANT TO CALIFORNIA SECURITIES LAWS,
### CAL. CORP. CODE § 25501
### (Against All Defendants)

49. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

50. As described above, Defendants offered to sell, and did sell, securities to Plaintiff by means of written and oral communications that included untrue statements of material fact

and omitted to state material facts necessary to make the statements made, in light of the circumstances under which the circumstances were made, not misleading.

51. As a result of Defendants' conduct, Plaintiff is entitled to the rescission of the Subscription Agreement. Plaintiff hereby intends the service of this Complaint to serve as notice to Defendants of the rescission of the Subscription Agreement, and demand that Defendants restore all consideration furnished by Plaintiff pursuant to the Subscription Agreement, plus interest at the legal rate.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF CALIFORNIA'S UNFAIR COMPETITION LAW,**
**CAL. BUS. & PROF. CODE § 17200** *et seq*
**(Against All Defendants)**

52. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

53. Defendants engaged in unlawful business practices in violation of the Unfair Competition Law by violating the Corporate Securities Law of 1968, Cal. Corp. Code §§ 25400(d), 25401, 25500, and 25501. Defendants also engaged in unlawful business practices in violation of the Unfair Competition Law by committing fraud and deceit, fraudulent concealment, constructive fraud, and negligent misrepresentation.

54. Defendants engaged in fraudulent business practices in violation of the Unfair Competition Law by making statements to Plaintiffs that were materially false, and by failing to disclose information that made other statements materially misleading.

55. Defendants engaged in unfair business practices in violation of the Unfair Competition Law because their business practices were immoral, unethical, oppressive, unscrupulous, and caused injury to consumers, and the gravity of their conduct outweighs any alleged benefits attributable to such conduct. Defendants' business practices violate public policy because they directly implicate the public interest by impacting matters of great

importance to the public.  Blue sky laws like California's Corporate Securities Law of 1968 were enacted to protect the public from fraud and deception in transactions involving securities, like the investment at issue here.

56. Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unlawful, fraudulent, and unfair conduct.

57. Plaintiff is entitled to restitution in the amount of Plaintiff's investment in SPP, because that investment was obtained through unlawful, fraudulent, and unfair business practices.

## SIXTH CAUSE OF ACTION
### FRAUD AND DECEIT
### CAL. CIV. CODE §§ 1709 & 1710 AND COMMON LAW
**(Against All Defendants)**

58. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

59. Defendants, for the purpose of inducing Plaintiff's purchase of securities, and subsequently for the purpose of misleading Plaintiff into not exercising his rights as a equity holder in SPP, made false and misleading statements of material facts and omitted to state material facts necessary to make the statements made, in light of the circumstances under which the circumstances were made, not misleading.

60. Defendant knew their representations were untrue or made such representations with reckless indifference to the truth or in a manner not warranted by the information known to Defendants.

61. Defendants purposefully made these representations to induce reliance by Plaintiff to purchase equity in SPP and to cause Plaintiff to refrain from exercising his rights as an equity holder in SPP.

62. Plaintiff was unaware of, and reasonably and justifiably relied upon Defendants'

material misrepresentations in purchasing and remaining invested in SPP as well as foregoing other potential investment opportunities.

63. Plaintiff's harm was a direct result of his reliance on Defendants' material misrepresentations.

## SEVENTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT
## CAL. CIV. CODE § 1710 AND COMMON LAW
**(Against All Defendants)**

64. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

65. Defendants deliberately concealed material information. Defendants made partial representations and concealed material facts and thus had a duty to disclose facts in order to prevent the statements they actually made from being misleading.

66. Defendants had exclusive knowledge of the concealed material facts and Plaintiff did not and could not reasonably be expected to know of these facts.

67. Defendants knew or had reason to know that the information they concealed was material, but they continued to conceal material information to induce Plaintiff's reliance purposefully and actively. Additional information regarding Defendants' knowledge is within Defendants' knowledge and control.

68. Plaintiff reasonably and justifiably relied upon Defendants' material misstatements and omissions and purchased and remained invested in SPP securities and forwent other potential investment opportunities due to Defendants' actions. Defendants' concealment was a substantial factor in causing Plaintiff's harm.

## EIGHTH CAUSE OF ACTION
## CONSTRUCTIVE FRAUD
## CAL. CIV. CODE § 1753 AND COMMON LAW
**(Against All Defendants)**

69. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

70. Defendants made statements to Plaintiff that were materially false, and failed to disclose information that made other statements materially misleading. Defendants had a duty to disclose such information in order to prevent the statements they actually made from being misleading.

71. Defendants misled Plaintiff to his prejudice by inducing Plaintiff to purchase securities in SPP, and remain invested in SPP, providing Defendants financial gain to their advantage.

72. Plaintiff was reasonably and justifiably misled by relying on Defendants' material misrepresentations and omissions.

73. As a direct and proximate result of Defendants' misleading statements, Plaintiff was damaged.

### NINTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
### CAL. CIV. CODE § 1710 AND COMMON LAW
**(Against All Defendants)**

74. Plaintiff realleges and incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

75. Due to their involvement in promoting and selling securities in SPP to Plaintiff and accepting Plaintiff's investment, Defendants had a particular duty to provide accurate information about SPP's business based on Plaintiff's pecuniary interest in that information.

76. Defendants supplied false material information and made material omissions of information to Plaintiff.

77. Defendants had no reasonable ground for believe their representations were true when made, yet intended that Plaintiff rely on their representations in order to solicit and retain

**COMPLAINT; DEMAND FOR JURY TRIAL**

funding for SPP.

78. Plaintiff reasonably and justifiably relied on the false information communicated by Defendants and sustained pecuniary loss as a direct and proximate result of such reliance.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, as follows:

a. Compensatory and consequential damages, restitution, rescission, costs, exemplary damages, including punitive damages, and disgorgement in an amount to be determined at trial;

b. An order requiring Defendants to provide an accounting and access to inspect the books and records of SPP;

c. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

d. Awarding Plaintiff attorneys' fees and all costs of collection and costs of suit; and

e. Awarding Plaintiff such additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all issues of fact raised by this Complaint.

DATED: February 10, 2021

Respectfully submitted,

TATKO LAW FIRM, PLLC

By: _____
Travis M. Tatko (CA Bar #289203)
649 Mission Street, 5th Floor
San Francisco, CA 94105
Phone: (415) 529-6619
Fax:    (888) 419-0650
TravisTatko@TatkoLawFirm.com

**COMPLAINT; DEMAND FOR JURY TRIAL**